16 Ariz. App. 147 (1971)
492 P.2d 27
In the Matter of the ESTATE of Newton PFEFFER, Deceased.
UNION BANK, Creditor-Appellant,
v.
Shirlee K. PFEFFER, Administratrix-Appellee.
No. 2 CA-CIV 1036.
Court of Appeals of Arizona, Division 2.
December 30, 1971.
Rehearing Denied January 27, 1972.
Review Denied February 29, 1972.
*149 Robertson, Molloy, Fickett & Jones, P.C., by John F. Molloy and Richard T. Coolidge, Tucson, Richard M. Davis, Tucson, of counsel, for creditor-appellant.
William C. Scott, Tucson, for administratrix-appellee.
HATHAWAY, Judge.
Union Bank, a creditor of the Estate of Newton Pfeffer, deceased, appeals from a decree settling the first annual account and report of the appellee-administratrix which approved the appellee's classification of appellant's claim as a "separate obligation." Appellant contends its claim is an obligation of the marital community which consisted of the decedent and his surviving spouse, the appellee-administratrix.
On August 26, 1969, appellant-Union Bank filed a claim against the estate in the principal amount of $69,000 plus accrued and accruing interest. The claim was based upon a promissory note executed by "N. Pfeffer," the decedent. Nothing appears on the face of the claim to indicate whether it was submitted as a separate or community claim.
The administratrix by instrument dated September 2, 1969, "allowed" the claim in accordance with A.R.S. § 14-564, subsec. A with the qualification endorsed on the allowance, however, "... as a separate obligation of Newton Pfeffer...." On September 12, 1969, the claim, with the qualifying endorsement, was allowed and approved by the probate court.
Appellant's attorney, while conversing by telephone with appellee's attorney at some time during the first half of December 1969, was advised that the claim had been approved. On February 21, 1970, appellant's attorney first learned that the claim had been classified by the administratrix as a separate obligation of the estate. He then moved on March 10, 1970, to modify or set aside appellee's and the court's qualified approval of the claim. The motion was denied by minute entry order on March 30, 1970. Appellant's objection to the "First Annual Account and Report" asking that the claim be approved as a community obligation was overruled by minute order on June 3, 1970. Appellant's motion for rehearing was denied and on October 9, 1970, a written order was entered overruling appellant's objection.
Appellant's contention throughout these proceedings and on appeal is that the appellee, acting "ex parte," had no authority to classify appellant's claim as a separate rather than a community obligation and that it is entitled to its day in court. Appellant also contends that it was erroneously denied relief under Ariz.R.Civ.P. 60(c), 16 A.R.S., as amended, and that if appellee's classification of the claim was in any manner deemed conclusive, appellant was denied due process of law.
Appellee's position is that she has authority to classify the claim as separate and that appellant's recourse is through an action provided for a rejected claim, to be brought within three months pursuant to A.R.S. § 14-579. The probate court apparently agreed.
On appeal, appellant first questions appellee's power to classify a claim, relying heavily on the proposition that a debt incurred by a married man is presumed to be a community obligation. Donato v. Fishburn, 90 Ariz. 210, 367 P.2d 245 (1961); Kreiss v. Shipp, 14 Ariz. App. 113, 481 P.2d 284 (1971). The presumption remains after death. See Greer v. Goesling, 54 Ariz. 488, 97 P.2d 218 (1939). Appellant contends that our statutes nowhere require that a claimant specify in his claim the "separate" or "community" nature of the obligation and that the probate statutes are similarly devoid of any provision authorizing the personal representative to classify a claim as a community or separate obligation. It contends that the reason is apparent when we consider the rule in California whence our probate code was taken, Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229 (1948); where all of the community property as well as the husband's separate estate is liable for satisfaction *150 of all debts contracted by the husband during marriage. Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641 (1941). In Arizona, however, upon death, the community is dissolved and the community interest of each spouse after payment of its share of community debts becomes liable for the separate obligations of the spouse. Greer v. Goesling, supra; Tway v. Payne, 55 Ariz. 343, 101 P.2d 455 (1940). The community interest of the surviving spouse is not chargeable for the separate debts of the decedent.
Thus evolves the crux of the problem. When, in Arizona, and how in processing a decedent's estate is the nature of the obligation determined? Appellant's position is that the court should make these determinations in the process of settling accounts and that the personal representative has no power or authority to make "ex parte" ruling in this regard. To hold otherwise, contends the appellant, would violate the basic principle that a personal representative has no powers beyond those given by statute. Braeuel v. Reuther, 270 Mo. 603, 193 S.W. 283 (1917). Authority cited supporting its position that such power does not exist includes Greer v. Goesling, supra, which indeed held that the wife in her capacity as administratrix was in no position to raise the issue that an indebtedness was the separate obligation of the deceased without intervening in her individual capacity as surviving spouse if she opposed categorization of the item as a community obligation. However, the case is inapposite to the crucial problem before us, i.e., was appellant foreclosed by failure to file an action within the three-month period?
We believe appellant's rights have been foreclosed. A.R.S. § 14-579, subsec. A provides:
"When a claim is rejected either by the executor or administrator or the judge, the holder may bring an action thereon against the executor or administrator within three months after the date of its rejection, if it is then due, or within two months after it becomes due, otherwise the claim shall be forever barred."
The Arizona Supreme Court has held that the purpose of the filing requirement and time limitation of the above statute is to inform the personal representative and the court of the valid claims against the estate so that the estate may be expeditiously administered. Barnett v. Hitching Post Lodge, Inc., 101 Ariz. 488, 421 P.2d 507 (1966). This is in keeping with our state policy of speedy presentation and consideration of claims to prevent intolerable delay in settling estates. In this regard the appellant contends that the administratrix lacks the power to enter what amounts to a final order which action it claims does not become final until the court settles the account. Estate of Tamer, 20 Ariz. 228, 179 P. 643 (1919). Tamer, however, dealt with the claims of potential heirs to the estate for which no other statutory remedy was provided. The court there said: "The allowance of claims is `not binding and conclusive against the heirs because they were not parties to it. They had therefore the right to question the allowance at the settlement of the estate.'" 20 Ariz. at 230, 179 P. at 644. This is not the case at hand. Appellant here filed a claim on a note signed by the decedent. The claim was duly considered and acted upon by the administratrix pursuant to A.R.S. §§ 14-564 and 14-579, which specifically provide a remedial procedure for alleged creditors of the estate. The claim was qualifiedly approved which, in our opinion, amounted to a rejection of that part of the claim not specifically approved. The only procedure left open to appellant if it was to preserve the claim in its entirety was a civil action within the three-month period. Not only do we believe that the personal representative has the power to classify the nature of the claim but in her function as administratrix she has the duty to guard the interests of all creditors and heirs. She is the trustee of the assets of the estate for all interested parties and must therefore protect the assets of *151 the estate against unlawful claims. In re Balke's Estate, 68 Ariz. 373, 206 P.2d 732 (1949). It is not unreasonable that protection of the estate may in some cases require a partial rejection of a claim. See In re Bette's Estate, 171 Cal. 583, 153 P. 949 (1915); Robison v. Robison, 63 Utah 68, 222 P. 595, 596 (1923), the court stating: "The rejection of the claim in part by the administrator starts the running of the statute from that date", and Jones v. Walden, 145 Cal. 523, 78 P. 1046, 1047 (1904), where the court held: "The allowance of the claim by the administrator for $343.58 was clearly, in law, a rejection of all the rest of the claim." Admittedly, these cases concern a rejection regarding the amount of the claim, see A.R.S. § 14-581, rather than the classification of particular assets from which a claim must be paid. The principles stated, however, are equally applicable. Closest in point to the instant case is In re McHugh's Estate, 165 Wash. 123, 4 P.2d 834 (1931). There the executrix "rejected" a claim as a community obligation. The court stated:
"That the claim was rejected as a community obligation, but was allowed as a separate debt payable from the separate property of the decedent, is clear.
* * * * * *
* * * The executrix knew, she so insisted and in her notice to the bank so stated, that the claim filed was the separate obligation of the deceased husband. Though she unequivocally rejected the claim as a community obligation, she as unequivocally allowed the claim as a valid claim against any property of her husband which might thereafter come into her hands * * *.
* * * * * *
Whatever her purpose, the executrix by her notice and order clearly allowed the respondent's claim as a valid claim against the separate property of the decedent." 4 P.2d at 836.
We note that unlike California, Washington, as does Arizona, recognizes a dichotomized concept of separate and community debts.
Whereas we believe that a claim must be expressly rejected to bring the nonclaim time limitation into play, see Hinkel v. Crowson, 83 Cal. App. 87, 256 P. 479 (1927), any act of writing showing intention to reject or approve a claim in whole or in part is sufficient. See San Francisco Bank v. St. Clair, 47 Cal. App.2d 194, 117 P.2d 703 (1941); Faias v. Superior Court, 133 Cal. App. 525, 24 P.2d 567 (1933). Appellee's written qualification exhibits a clear intention to limit the claim only to the separate estate of the decedent.
We note that the California statute, Cal.Prob.Code § 714 (West 1956) provides for written notice of the rejection to the holder or filer of the claim. The Arizona statute, however, has no similar provision and constructive notice is presumed by the action of the personal representative or the passing of ten days. A.R.S. § 14-564, subsec. B. Thus, the burden rests upon the claimant to ascertain the full and exact status of his claim. He must keep himself advised of the situation at his peril. In an early Arizona case, Underwood v. Brown, 7 Ariz. 19, 60 P. 700 (1900), a claim was left with the attorney for the administrator and subsequently lost before being approved. The claim was held to have been barred in a separate suit eight months later, the court stating:
"It was incumbent upon the plaintiff to have followed up the claim diligently, and to have ascertained promptly what disposition was made of it...." 7 Ariz. at 22, 60 P. at 701.
See also Lindsay v. Hogan, 56 Mont. 583, 185 P. 1118, 1119 (1919), the court stating:
"The provisions of this section, together with those of section 7530, clearly imply *152 that the obligation devolves upon the claimant to make inquiry as to the action which has been taken with reference to his claim and, if it has been rejected, to act accordingly."
This does not present an unreasonable burden as the administratrix is required by law to either reject or allow the claim within the ten-day period of its presentation or it is deemed rejected. The appellant having been put on notice by the necessity of filing its claim and after having filed cannot now complain of lack of opportunity to present its claim. Indeed, it makes no difference even if the appellant was misled by the opposing attorney into believing no further action was necessary. Lowry v. Crandall, 52 Ariz. 501, 83 P.2d 1003 (1938); Certain-Teed Products Corporation v. Luke, 74 F.2d 384 (9th Cir.1934).
We find no merit in appellant's contention that an affirmance will deny it due process. Appellant duly filed its claim. It had three months after the rejection in which to reassert its claim in a separate action. As it chose not to pursue its day in court during the three months, it cannot complain now of its own inaction. Nor is this a proper case to invoke Ariz.R.Civ. P. 60(c), as amended. Appellant's sole remedy was to bring a separate civil suit within three months. Failure to act within that time, in the absence of fraud or specific legislative exception, bars not only the remedy but any rights of the non-acting party. Certain-Teed Products Corporation v. Luke, supra. As the court there stated, 74 F.2d at 386:
"In absence of a special statute making exceptions to the bar of the statute resulting from a failure to present a claim or bring action upon a rejected claim within the time allowed, the courts are powerless to relieve the claimant who has failed to comply with the statute."
Affirmed.
KRUCKER, C.J., and HOWARD, J., concur.